**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| KYLE HARVEY, Natural and Biological Father of A.H., a Deceased Minor, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>GREAT CIRCLE, et al., )<br>)<br>Defendants. ) | Case No. 4:19-CV-902-NAB |

**MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's Amended Motion to Compel and to Enforce Subpoena Directed to non-party Missouri Department of Social Services ("DSS"). [Doc. 90.] The Court held a hearing on this motion on September 16, 2020. The Court then issued an order on September 18, 2020 granting in part, denying in part, and holding in abeyance in part Plaintiff's Amended Motion to Compel. [Doc. 99.] Now the Court will address the last remaining issue in Plaintiff's motion. For the following reasons, the Court will grant in part and deny in part Plaintiff's motion to compel on the remaining issue.

**I.       Background**

Plaintiff requested that the Court conduct an *in camera* review of documents, specifically emails between Defendant Great Circle and DSS, which DSS asserts are subject to attorney client privilege and work product privilege. The Court granted Plaintiff's request to review the documents *in camera* and DSS submitted the documents to the Court through an *ex parte* filing on September 18, 2020. [Doc. 98.] Plaintiff and DSS submitted supplemental briefing on whether these emails were privileged. [Docs. 100, 101.]

**II.     Standard or Review**

"A command in a subpoena to produce documents, electronically stored information, or tangible things requires the responding person to permit inspection, copying, testing, or sampling of the materials." Fed. R. Civ. P. 45(a)(1)(D). "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). "A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand." Fed. R. Civ. P. 45(e)(1)(A).

"The court for the district where compliance is required- and also, after a motion is transferred, the issuing court- may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed. R. Civ. P. 45(f). "As provided for in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection." Fed. R. Civ. P. 34(c). "A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must (i) expressly make the claim; and (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim." Fed. R. Civ. P. 45(e)(2)(A).

**III.    Discussion**

In this case, non-party DSS asserts a claim of privilege over emails between its counsel in the Division of Legal Services ("DLS"), the legal arm of DSS, and its contractor Great Circle's employees. DLS is a division of DSS and provides legal support to all of DSS' programs and

support provisions.  Defendant Great Circle is a contractor hired by DSS to manage foster care services in the State of Missouri among other duties.  Plaintiff asserts that there is no authority for DSS or DLS to represent Great Circle and that the contract between them specifically states that DLS "will not represent the interests of the contractor."

### A.   Attorney Client Privilege

"The common law- as interpreted by United States courts in the light of reason and experience- governs a claim of privilege unless any of the following provides otherwise:  the United States Constitution; a federal statute; or rules prescribed by the Supreme Court."  Federal Rule of Evidence 501.  "But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of law."  *Id.*  Federal law of privileges should be applied in federal question civil cases and with respect to pendant state law claims when they arise in a federal question case.  Fed. R. Evid. 501 advisory committee's note to 1974 enactment.  This action was filed in this court based on federal subject matter jurisdiction with pendant state law claims.  Therefore, the federal law of privileges shall apply.

"The attorney-client privilege ranks among the oldest and most established evidentiary privileges known to our law."  *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 165 (2011).  "[T]he attorney-client privilege is, perhaps, the most sacred of all legally recognized privileges, and its preservation is essential to the just and orderly operation of our legal system."  *United States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997).  "Generally, it is well established under common law that confidential communications between an attorney and a client are privileged and not subject to disclosure absent consent of the client."  *United States v. Ivers*, 967 F.3d 709, 715 (8th Cir. 2020) (citing *United States v. Horvath*, 731 F.2d 557, 562 (8th Cir. 1984)). "Its aim is 'to encourage full and frank communication between attorneys and their clients and thereby promote

3

broader public interests in the observance of law and administration of justice.'" *Jicarilla*, 564 U.S. at 169 (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)).

"However, '[p]rivileges, as exceptions to the general rule, are not lightly created nor expansively construed, for they are in derogation of the search for truth.'" *Ivers*, 967 F.3d at 716 (quoting *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 918 (8th Cir. 1997)). Therefore, "the attorney-client privilege is narrowly construed and 'protects only those disclosures— necessary to obtain informed legal advice—which might not have been made absent the privilege.'" *Ivers*, 967 F.3d at 716 (quoting *Fisher v. United States*, 425 U.S. 391, 403 (1976)); *see also Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977) ("While the privilege, where it exists, is absolute, the adverse effect of its application on the disclosure of truth may be such that the privilege is strictly construed.").

> [T]he attorney-client privilege is applicable to an employee's communication if (1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

*In re Bieter Co.*, 16 F.3d 929, 936 (8th Cir. 1994 (citing *Diversified*, 572 F.2d at 609 (en banc)). "The party asserting privilege bears the burden of establishing its applicability." *Oasis Int'l Waters, Inc. v. United States*, 110 Fed. Cl. 87, 97 (2013). The privilege does not apply when an attorney acts as a business or economic advisor. *Id.* at 98.

> A given communication might not be protected from disclosure for several principal reasons, nine of which the Court has previously identified: (1) the communication only concerned only underlying facts, and the communication was

4

> not shared in order to solicit legal advice; (2) disclosure of the communication to a third party waived its protection; (3) no attorney was involved with the communication and the communication did not reflect privileged advice from an attorney; (4) any attorney involvement was merely as a passive recipient of the information; (5) the attorney's advice was not legal in nature; (6) the communication was not made for the purpose of obtaining the attorney's legal advice; (7) the communication was made by an employee to whom the privilege does not extend; (8) the communication was not intended to be confidential; and (9) the document is attorney work product, but the party seeking production has demonstrated that the communication is discoverable.

*Muldrow v. City of St. Louis*, No. 4:18-CV-2150 AGF, 2019 WL 5597057 at *2 (E.D. Mo. Oct. 30, 2019) (citing *Jo Ann Howard & Assoc. v. Cassity*, No. 4:09-V-1252 ERW, 2012 WL 2396423 at *4 (E.D. Mo. June 25, 2012)).

The government is entitled to the same attorney-client privilege as any other client in a civil case. *See Ross v. City of Memphis*, 423 F.3d 596, 600-601, 603 (6th Cir. 2005) (no reason why the promotion of full and frank communications between attorneys and their clients should be different because the organization is a government entity); *In re Witness Next Before Special Grand Jury 2000-2*, 288 F.3d 289, 291 (7th Cir. 2002) (State of Illinois entitled to the same attorney-client privilege as any other client in the civil and regulatory context). "The attorney client privilege applies to public entities as clients, including officers or agents of public entities acting in their official capacities, and including federal agencies, state agencies or departments, county bodies, municipal bodies, towns, and school boards. 98 C.J.S. *Witnesses* § 351 (2020). It is well established that attorney client privilege may extend to outside consultants and contractors that are the functional equivalent of employees. *Bieter*, 16 F.3d at 938-40. Although the Eighth Circuit has not addressed attorney-client privilege in the context of government agencies and their contractors, there is no reason to find that this privilege does not also extend to government

agencies.  *See e.g. Alliance Construction Solutions, Inc.*, 54 P.3d 861, 870-71 (citing *Bieter*, Colorado Department of Corrections could assert attorney client privilege over communications between its legal counsel and an independent contractor who served as project manager of a construction project at issue in the case).

The Children's Division of DSS is statutorily directed to "enter into and implement contracts with qualified children's services providers and agencies to provide a comprehensive and deliberate system of service delivery for children and their families." Mo. Rev. Stat. § 210.112.4. The Missouri Supreme Court rules governing juvenile and family court proceedings defines children's division to include "private agencies that have contracted with the children's division to provide case management services." Mo. Sup. Ct. R. 110.04 cmt.  DSS has contracted with Great Circle to provide foster care management services in Missouri.  Great Circle's case managers provide the same services as case managers employed by the Children's Division.  Therefore, the Court finds that DLS can seek to protect its communications with DSS employees and Great Circle's employees, including Defendant Kelly Anne Connelly.  Nothing Plaintiff has cited supports a finding that Great Circle's case managers cannot be considered the functional equivalent of employees.

The Court reviewed the documents that DSS submitted *in camera* to determine whether these specific communications are protected by attorney client privilege.  The Court also reviewed the exhibits to Plaintiff's Motion to Compel to ascertain the parties' arguments regarding specific documents.

The Court finds that Document AGO0000015588 is not protected by attorney-client privilege.  That document does not appear to be made for the purpose of securing legal advice.  It appears that the attorney was just copied on the e-mail.  The Eighth Circuit has held that including

6

an attorney in a discussion or as an addressee of a communication does not make that communication privileged. *See Simon v. G.D. Searle & Co.*, 816 F.2d 397, 403 (8th Cir. 1987). The Court believes that the document may be protected from disclosure based on the protective order DSS and Plaintiff signed and the Court's previous orders, but it is not protected from disclosure based on attorney client privilege.

The Court finds that the original email of DSS legal counsel Theodora Strassburg on March 9, 2016 at 10:00 a.m., the response to that email from Emily Rinehart on March 11, 2016 at 9:48 a.m., and the response e-mail from Natasha Ross to Ms. Strassburg and Ms. Rinehart on March 11, 2016 at 1:25 p.m. are protected by attorney client privilege. These e-mails are protected in their entirety by the attorney-client privilege because the emails reflect communications with DLS counsel for the purpose of obtaining legal advice. These e-mails are included in Documents 961, 962, and 963 and portions of documents AGO0000035296, AGO0000035445, AGO0000035446, AGO0000035449, AGO0000035451, AGO0000035516, AGO0000035532, AGO0000036054. The remaining communications included in documents AGO0000035296, AGO0000035445, AGO0000035446, AGO0000035449, AGO0000035451, AGO0000035516, AGO0000035532, AGO0000036054 are not protected by attorney client privilege. These emails discuss the location and times of meetings, phone numbers, and the transfer of the case to another employee.

The Court finds that Document AGO46142 is not protected by attorney client privilege. DSS has made no argument in either of its memoranda in opposition to indicate why this particular document is protected by attorney-client privilege. The document is an e-mail with a memorandum attached from Christy Collins to a substantial number of people regarding Great Circle inquiries. There is no indication whatsoever that this e-mail was sent to obtain legal advice or services or that legal counsel was involved in this communication at all. DSS has the burden of

7

proving that a document is privileged. On the face of this document, the Court cannot ascertain any reason it would be subject to attorney-client privilege, therefore, the Court will not prohibit disclosure based on attorney client privilege.

The Court finds that Documents AGO45235, AGO45236, AGO45237, AGO45240, AGO45544 are protected by attorney-client privilege. These communications constitute an email chain regarding the solicitation of legal advice about a Sunshine Law request.

### B. Work Product

DSS has claimed work product privilege over one document. "There are two kinds of work product—ordinary work product and opinion work product. Ordinary work product includes raw factual information." *Baker v. General Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000) (citing *Gundacker v. Unisys Corp.,* 151 F.3d 842, 848 n. 4 (8th Cir.1998)). "Opinion work product includes counsel's mental impressions, conclusions, opinions or legal theories." *Baker*, 209 F.3d at 1054 (citing *Gundacker*, 151 F.3d at 848 at n. 5). "Ordinary work product is not discoverable unless the party seeking discovery has a substantial need for the materials and the party cannot obtain the substantial equivalent of the materials by other means." *Baker*, 209 F.3d at 1054 (citing Fed.R.Civ.P. 26(b)(3)). "In contrast, opinion work product enjoys almost absolute immunity and can be discovered only in very rare and extraordinary circumstances, such as when the material demonstrates that an attorney engaged in illegal conduct or fraud." *Id*. (citing *In re Murphy,* 560 F.2d 326, 336 (8th Cir.1977)).

As stated above, DSS can assert work product privilege over documents that were shared with Great Circle employees who were the functional equivalent of DSS employees. DSS asserted work product privilege for one document- Document AGO45013. The Court finds that this

document is protected from disclosure by the work product doctrine, because it constitutes opinion work product that includes counsel's mental impressions, conclusions, opinions or legal theories.

### IV. Conclusion

The Court ends with a reminder to the parties from *Bieter*:

> Application of the attorney client privilege to communications such as those involved here … puts the adversary in no worse position than if the communications had never taken place. The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney: … "The protection of the privilege extends only to communications and not to facts. A fact is one thing and a communication concerning that fact is an entirely different thing. The client cannot be compelled to answer the question, "What did you say or write to the attorney?" but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication to his attorney.

*Bieter*, 16 F.3d at 940-41 (citing Upjohn Co., v. United States, 449 U.S. 383, 395-96 (1981) (internal citations omitted).

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Amended Motion to Compel and to Enforce Subpoena Directed to non-party Missouri Department of Social Services regarding the documents Missouri Department of Social Services identified as subject to attorney-client privilege with Great Circle's employees is **GRANTED in part and DENIED in part as described above**. [Doc. 90.]

**IT IS FURTHER ORDERED** that Plaintiff's Amended Motion to Compel and to Enforce Subpoena Directed to non-party Missouri Department of Social Services is **GRANTED in part and DENIED** in part as outlined in this order and the Court's September 18, 2020 Order.  [Docs. 90, 99.]

_[signature]_

NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE

Dated this 6th day of November, 2020.