# Exhibit A

**Plaintiff's Complaint (Doc. 1-1)**
**(public document not filed under seal or**
**redacted to anything but the minor's name)**

Case: 4:19-cv-00902-NAB   Doc. #: 151-1   Filed: 11/30/21   Page: 2 of 20 PageID #: 1711
Case: 4:19-cv-00902   Doc. #: 1-1   Filed: 04/09/19   Page: 1 of 19 PageID #: 4

19JE-CC00148

Electronically Filed - Jefferson - February 25, 2019 - 04:59 PM

IN THE CIRCUIT COURT OF JEFFERSON COUNTY
STATE OF MISSOURI

| | |
|---|---|
| **KYLE HARVEY**, <br> Class 1 Representative and Natural and <br> Biological Father of A▮▮▮▮ K. H▮▮▮▮ <br> A Deceased Minor, <br><br> Plaintiff, <br><br> vs. <br><br> **GREAT CIRCLE,** <br> *SERVE: REGISTERED AGENT:* <br> *BCRA CO* <br> *221 BOLIVAR STREET, SUITE 101* <br> *JEFFERSON CITY, MO 65101* <br><br> **KELLY ANN CONNELLY** <br> *SERVE:* <br> *34 N 7TH ST APT 3BB, BROOKLYN, NY* <br> *11249-3783* <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Cause No.: <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## PETITION FOR WRONGFUL DEATH

**COMES NOW** Plaintiff Kyle Harvey, by and through his attorneys, E. Ryan Bradley and Julia M. Kerr of The Bradley Law Firm, and for his cause of action for Wrongful Death pursuant to Missouri Revised Statutes 537.010, *et. seq.*, against Defendants states to the court as follows:

1.  Plaintiff is and was at all times relevant a resident of the State of Missouri, City of St. Louis, address generally known as 7500 Morganford, St. Louis, Missouri.

2.  Plaintiff is the natural and biological father of the Decedent, A▮▮▮ K. H▮▮▮▮, a minor, born February 18, 2013.

1

**EXHIBIT A**

3. Plaintiff, within the meaning of Mo. Rev. Stat. § 537.080.1, is a class one beneficiary and entitled to bring this cause of action.

4. Defendant Great Circle, a Non-For-Profit Organization, has and had at all times relevant, its Principle Place of Business or Corporate Headquarters in the State of Missouri, County of Phelps, address generally known as, 13160 County Road 3610 P.O. Box 189, St. James, Missouri 65559.

5. Defendant Kelly Ann Connelly is and was at all times relevant herein an employee of Great Circle, tasked with providing the services Great Circle contracts to perform with the State of Missouri Department of Social Services and/or the Children's Division.

6. Beginning December 14, 2015, The Jefferson County Children's Division (hereinafter "JCCD") was in custody of the Decedent as well as two of the Decedent's siblings, Lilly Brook Harvey and Jakob Matthew Buhlinger (collectively hereinafter referred to as "Children").

7. JCCD hired Defendant Great Circle and its employee Kelly Connelly to provide services of counseling, evaluation and investigation into the assessment and facilitation of returning the Children back to the custody of their natural and biological mother, Kaylenn N. Darby (hereinafter "Darby").

8. Defendants provided the above-mentioned services and investigation into pertinent issues involving the safety of the home of Darby, 6612 Dry Creek Rd., Barnhart, Missouri 63012-1304 (hereinafter referred to as "Residence"), and investigation into issues pertinent to the reunification of the Children with their mother.

9. At all times during Defendants' aforementioned services and investigation, Darby shared her Residence with William Allen Harris (hereinafter "Harris").

10. On October 7, 2015, Defendant Great Circle, by and through its employee, agent and servant Kelly Connelly, Foster Care Manager, was aware of abuse and/or suspected abuse perpetrated upon Decedent while living in the residence with Darby and in a report to the Court stated Harris was living with Darby in the Residence and that Harris was frequently left alone to supervise the Children, including Decedent.

11. At all times herein stated, attorney William C. Dodson was appointed the guardian ad litem over Decedent in connection with all proceedings mentioned herein.

12. Defendant Great Circle and Connolly's October 7, 2015 report identified Harris as a suspect in causing injuries to Decedent that required her to seek medical treatment on August 2, 2015 for facial injuries, and bruising to her genital area, as well as an angulated fracture to Decedent's humerus.

13. Defendant Great Circle and Connolly's October 7, 2015 report also identified Harris as a suspect in fracturing Decedent's right humerus on September 8, 2015.

14. As a result of the abuse perpetrated upon the Decedent, as described in paragraphs 12 and 13 above, the JCCD assumed physical and legal custody of Darby's Children, including Decedent, and accordingly Darby's Children, including Decedent, were temporarily totally removed from her residence.

15. On November 3, 2015, the Court ordered that the Children could be reunified with their mother on the pre-condition that a) Harris have no unsupervised contact with any of the Children until he b) has a clean drug screen as requested by the family support team and c) is approved by the family support team. The Court specifically stated Harris could not live in the home until these preconditions were met.

16. Despite the Court's Order, Defendants allowed the Children to immediately thereafter live with their mother despite the fact that Harris had not taken or passed a drug screen, was not approved by the family support team, and was living at the Residence.

17. On the next court hearing, despite the fact that Defendants violated the Court's Order, Defendants recommended that the Decedent, along with the Children, be returned to the residence of Darby and in bad faith misrepresented facts to the Court which resulted in the Court ordering reunification with the mother, despite the Court's initial concerns regarding Harris not being investigated and/or overlooked and/or intentionally disregarded by Defendants.

18. At all times pertinent hereto, Defendants knew, or could have known, that Harris continued to reside with Darby and that Harris would regularly be left to care for Decedent and the Children.

19. At the time Defendants recommended Decedent be reunified with Darby, Defendants knew, or could have known, that Harris continued to live in the Residence and was actively using and addicted to heroin and/or other controlled substances with similar effects to heroin, which are commonly known to include, but are not limited to, delusion, suicide, homicide, irrational thoughts and behavior, violence, and abuse.

20. Defendants did not perform any evaluation, screening, or additional investigation of Harris before recommending the reunification, in violation of a Court order directing otherwise.

21. Thereafter, Defendants in bad faith represented to the Court that Harris had been drug tested and approved by Defendants despite this being untrue.

Case: 4:19-cv-00902-NAB   Doc. #: 151-1   Filed: 11/30/21   Page: 6 of 20 PageID #: 4715
Case: 4:19-cv-00902   Doc. #: 1   Filed: 04/09/19   Page: 5 of 19 PageID #: 8
Electronically Filed - Jefferson - February 25, 2019 - 04:59 PM

22. In the alternative to Paragraph 21, Plaintiff alternatively pleads that Defendants in bad faith failed to represent to the Court that Harris had not been drug tested and approved by Defendants as a precondition of reunification with Decedent's mother.

23. On March 7, 2016, the Decedent was left alone in the care of Harris at the Residence in violation of the Court's directive and at which time Harris beat, strangled and drowned the three-year-old Decedent in a bathtub causing her death while under the influence of heroin and/or a controlled substance with effects similar to heroin.

24. Subsequently, Harris was arrested and charged with Charge Code/Description 568.060-001Y20133802.0 Abuse Or Neglect of A Child – Resulting In Death Under Sec. 568.060.5(2) 568.060 RSMO, in connection with the death of Decedent.

25. At all times relevant herein, Great Circle contracted with the State of Missouri to provide case management services to Decedent and Plaintiff, among others within the State pursuant to 13 CSR 35-32.020.

## COUNT I- WRONGFUL DEATH PREMISED UPON NEGLIGENCE
## HARVEY v. GREAT CIRCLE AND CONNELLY

26. Plaintiff realleges and reincorporates paragraphs 1-25 above as if fully set forth herein.

27. At all times relevant herein, Defendants Great Circle and Connelly were required to comply with all requirements of federal and state law which apply to permanency planning and were required to fully implement and comply with all written policies of the Children's Division which do not conflict with federal and state laws, including but not limited to the Federal Adoption and Safe Family Act (ASFA), RSMO Chapter 210, *et. seq.*, Missouri State Code of Regulations 13 CSR 35, Decedent's Constitutional Rights secured by the Fourteenth

5

Case: 4:19-cv-00902-NAB Doc. #: 151-1 Filed: 11/30/21 Page: 7 of 20 PageID #: 4716
Case: 4:19-cv-00902 Doc. #: 1 Filed: 04/09/19 Page: 6 of 19 PageID #: 6
Electronically Filed - Jefferson - February 25, 2019 - 04:59 PM

Amendment to the United States Constitution as well as the Missouri Constitution, and the Missouri "Child Welfare Manual" found at https://dss.mo.gov/cd/info/cwmanual.

28. The "Child Welfare Manual," at all relevant times herein, was adopted by the State of Missouri and the Children's Division of the Department of Social Services.

29. Defendants knowingly violated stated, written policies of the Children's Division, rules promulgated by the Children's Division, as well as Missouri state laws related to child abuse and neglect, Missouri state laws directly related to child abuse and neglect activities of the division, as well as local ordinances relating to the safety condition of the property and therefore not entitled to qualified immunity under RSMO 210.114.

30. That RSMO 210.114 is unconstitutional in that it violates Plaintiff's and Decedent's rights to due process and their civil rights because the complained of acts done by Defendants were in violation of clearly established statutory or constitutional rights of which a reasonable person would have known. As such, RSMO 210.114 conflicts with Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). It also conflicts with Blazek v. City of Iowa City, 761 F.3d 920, 922 (8th Cir. 2014) (quoting Stanton v. Sims, 134 S.Ct. 3, 5, (2013))("Qualified immunity doctrine gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law."). It also conflicts with Borgman v. Kedley, 646 F.3d 518, 522 (8th Cir. 2011)(When determining whether a state official is entitled to qualified immunity, we decide whether the alleged facts demonstrate that his conduct violated a constitutional right and whether that right was clearly established at the time of violation. The defendants are entitled to qualified immunity unless the answer to both of these questions is yes.). It also conflicts with McCaster v. Clausen, 684 F.3d 740, 746 (8th Cir. 2012)(A right is clearly established when "[t]he contours of the right must be

sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). In other words, the right violated must have been established "beyond debate." Manning v. Cotton, 862 F.3d 663, 668 (8th Cir. 2017).

31. Defendants are not entitled to immunity under RSMO 210.135 as that law only provides immunity for any person, official, or institution complying with the provisions of sections 210.110 to 210.165 in the making of a report, the taking of color photographs, or the making of radiologic examinations pursuant to sections 210.110 to 210.165, or both such taking of color photographs and making of radiologic examinations, or the removal or retaining a child pursuant to sections 210.110 to 210.165, or in cooperating with the division, or any other law enforcement agency, juvenile office, court, or child-protective service agency of this or any other state, in any of the activities pursuant to sections 210.110 to 210.165, or any other allegation of child abuse, neglect or assault, pursuant to sections 568.045 to 568.060. To be clear, the intent of this law is only to facilitate immunity for individuals to report abuse and to comply with the Children's Division's own investigation. This law is not designed to protect the Children's Division or any contractor.

32. Defendants are not entitled to immunity under RSMO 210.135 because upon information and belief, it and its employees, acting within the course and scope of their employment with Great Circle, filed a false report, acted in bad faith, and with ill intent, negating any immunity that RSMO 210.135 purports to provide.

33. Even if RSMO 210.135 by its express terms provides qualified immunity to Defendants, it is unconstitutional for the reasons set forth herein.

34. Defendants breached their duties and were thereby negligent in one or more of the following ways:

Electronically Filed - Jefferson - February 25, 2019 - 04:59 PM

a.) Defendants knew or could have known that Harris was living in the Residence and presented a clear and present danger to Decedent's life based upon his past acts of abuse perpetrated upon Decedent as described hereinabove;

b.) Defendants knew or could have known that Harris was living in the Residence and presented a clear and present danger to Decedent's life based upon his past and continuing use of heroin and/or other controlled substances with similar effects of heroin;

c.) Defendants failed to adequately investigate the nature and extent of the relationship between Harris and Darby at the time Defendants recommended reunification;

d.) Defendants failed to adequately develop and/or implement adequate safeguards for Decedent at the time it recommended reunification;

e.) Defendants failed to request or secure a negative drug screen from Harris as required by court order prior to reunification with Decedent's mother;

f.) Defendants, as a "social worker" and/or "other child care worker" within the meaning of RSMo 210.115.1, negligently failed to immediately report to JCCD that reasonable cause existed to suggest that Decedent might be subjected to abuse or neglect as a result of the reunification;

g.) Defendants failed to keep the Court reasonably informed as to the housing situation involving Decedent;

h.) Defendants intentionally and in bad faith made material misrepresentations to the Court concerning who was living with Decedent; and

Electronically Filed - Jefferson - February 25, 2019 - 04:59 PM

  i.) Defendants knowingly defied a controlling court order that they were under a ministerial duty to comply with, namely that the Decedent shall not be allowed to live with the mother and Harris shall not have any unsupervised contact with Decedent until Harris has a "clean drug screen" as requested by the family support team and is approved by the family support team. Thereafter, Defendants knowingly misled the Court, in bad faith, that these conditions to reunification had been met when they in fact had not, resulting in the Court ordering placement of Decedent with her mother and Harris.

35. Decedent's death was directly and proximately caused by the negligence of Defendants as described above.

36. As a direct and proximate cause of Defendants' negligence, Plaintiff and the other Class 1 beneficiaries sustained loss because of Decedent's death in the nature of pecuniary losses as well as the loss of Decedent's companionship, comfort, counsel, support, guidance, instruction, and consortium.

37. That as a direct and proximate result of the Defendants' negligence, Decedent suffered conscious severe pain, anxiety and mental distress, prior to her death.

38. As a direct and proximate cause of Defendants' negligence, Plaintiff was required to incur expenses for the Decedent's funeral and burial.

39. Upon information and belief, Defendant Connelly claimed to be at the time of the allegations giving rise to this lawsuit responsible for 15-25 children varying in ages from 1 day old to 21 years old as their legal guardian, and was tasked with making legal and medical decisions regarding those children, including but not limited to authoring reports to the courts, testifying in court, working with law enforcement, was responsible for home investigations and

9

Electronically Filed - Jefferson - February 25, 2019 - 04:59 PM

Case: 4:19-cv-00902-NAB Doc. #: 151-1 Filed: 11/30/21 Page: 11 of 20 PageID #: 4720
Case: 4:19-cv-00902 Doc. #: 1-1 Filed: 04/09/19 Page: 10 of 19 PageID #: 13
Electronically Filed - Jefferson - February 25, 2019 - 04:59 PM

insuring the children's safety under her care, was required to make critical decisions and remain calm in a high stress environment to ensure these Childrens' safety, all the while knowing these children were exposed to high risk and/or dangerous situations.

40. Upon information and belief, Defendant Connelly was overloaded with work as assigned to her by Great Circle, creating an untenable and unsustainable work load, which resulted in Connelly subverting the aforementioned rules and regulations, which were designed to ensure the safety of protected children, in an effort to bring child abuse cases to a premature final conclusion by deceiving the Courts of pertinent facts, which resulted in the artificial and premature disposition of cases on false pretenses, which had the desired effect of reducing Defendant Connelly's work load.

41. That at all times relevant herein, Great Circle knew Connelly and its case workers were overworked and could not adequately perform their required functions, which resulted in reckless indifference to the safety and wellbeing to the clients they represented, including Decedent, all of which justifies the award of punitive damages.

42. That Great Circle in the year 2016 had a total net worth of $92,796,742.

**WHEREFORE**, Plaintiff demands trial by jury and Plaintiff prays for the Court to enter judgment for the Plaintiff and assess damages against Defendants in an amount excess of Twenty-Five Thousand Dollars ($25,000.00) and their costs herein incurred, for punitive damages and such any and such other or further relief as this Court deems just and proper.

## COUNT II- WRONGFUL DEATH PREMISED UPON INTENTIONAL TORT
## HARVEY v. GREAT CIRCLE AND CONNELLY

43. Plaintiff realleges and reincorporates paragraphs 1-42 above as if fully set forth herein.

10

44. At all times relevant herein, Defendants Great Circle and Connelly were required to comply with all requirements of federal and state law which apply to permanency planning and were required to fully implement and comply with all written policies of the Children's Division which do not conflict with federal and state laws, including but not limited to the Federal Adoption and Safe Family Act (ASFA), RSMO Chapter 210, *et. seq.*, Missouri State Code of Regulations 13 CSR 35, Decedent's Constitutional Rights secured by the Fourteenth Amendment to the United States Constitution as well as the Missouri Constitution, and the Missouri "Child Welfare Manual" found at https://dss.mo.gov/cd/info/cwmanual.

45. The "Child Welfare Manual," at all relevant times herein, was adopted by the State of Missouri and the Children's Division of the Department of Social Services.

46. Defendants knowingly violated stated, written policies of the Children's Division, rules promulgated by the Children's Division, as well as Missouri state laws related to child abuse and neglect, Missouri state laws directly related to child abuse and neglect activities of the division, as well as local ordinances relating to the safety condition of the property and therefore not entitled to qualified immunity under RSMO 210.114.

47. That RSMO 210.114 is unconstitutional in that it violates Plaintiff's and Decedent's rights to due process and their civil rights because the complained of acts done by Defendants were in violation of clearly established statutory or constitutional rights of which a reasonable person would have known. As such, RSMO 210.114 conflicts with Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). It also conflicts with Blazek v. City of Iowa City, 761 F.3d 920, 922 (8th Cir. 2014) (quoting Stanton v. Sims, 134 S.Ct. 3, 5, (2013))("Qualified immunity doctrine gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law."). It also

--

conflicts with Borgman v. Kedley, 646 F.3d 518, 522 (8th Cir. 2011)(When determining whether a state official is entitled to qualified immunity, we decide whether the alleged facts demonstrate that his conduct violated a constitutional right and whether that right was clearly established at the time of the violation. The defendants are entitled to qualified immunity unless the answer to both of these questions is yes.). It also conflicts with McCaster v. Clausen, 684 F.3d 740, 746 (8th Cir. 2012)(A right is clearly established when "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). In other words, the right violated must have been established "beyond debate." Manning v. Cotton, 862 F.3d 663, 668 (8th Cir. 2017).

48. Defendants are not entitled to immunity under RSMO 210.135 as that law only provides immunity for any person, official, or institution complying with the provisions of sections 210.110 to 210.165 in the making of a report, the taking of color photographs, or the making of radiologic examinations pursuant to sections 210.110 to 210.165, or both such taking of color photographs and making of radiologic examinations, or the removal or retaining a child pursuant to sections 210.110 to 210.165, or in cooperating with the division, or any other law enforcement agency, juvenile office, court, or child-protective service agency of this or any other state, in any of the activities pursuant to sections 210.110 to 210.165, or any other allegation of child abuse, neglect or assault, pursuant to sections 568.045 to 568.060. To be clear, the intent of this law is only to facilitate immunity for individuals to report abuse and to comply with the Children's Division's own investigation. This law is not designed to protect the Children's Division or any contractor.

49. Defendants are not entitled to immunity under RSMO 210.135 because upon information and belief, it and its employees, acting within the course and scope of their

12

Electronically Filed - Jefferson - February 25, 2019 - 04:59 PM

employment with Great Circle, filed a false report, acted in bad faith, and with ill intent, negating any immunity that RSMO 210.135 purports to provide.

50. Even if RSMO 210.135 by its express terms provides qualified immunity to Defendants, it is unconstitutional for the reasons set forth herein.

51. Defendants intentionally breached their duties in one or more of the following ways:

> a.) Defendants knew or could have known that Harris was living in the Residence and presented a clear and present danger to Decedent's life based upon his past acts of abuse perpetrated upon Decedent as described hereinabove;
>
> b.) Defendants knew or could have known that Harris was living in the Residence and presented a clear and present danger to Decedent's life based upon his past and continuing use of heroin and/or other controlled substances with similar effects of heroin;
>
> c.) Defendants failed to adequately investigate the nature and extent of the relationship between Harris and Darby at the time Defendants recommended reunification;
>
> d.) Defendants failed to adequately develop and/or implement adequate safeguards for Decedent at the time it recommended reunification;
>
> e.) Defendants failed to request or secure a negative drug screen from Harris as required by court order prior to reunification with Decedent's mother;
>
> f.) Defendants, as a "social worker" and/or "other child care worker" within the meaning of RSMo 210.115.1, intentionally failed to immediately report to

13

Case: 4:19-cv-00902-NAB Doc. #: 151-1 Filed: 11/30/21 Page: 15 of 20 PageID #: 4724
Case: 4:19-cv-00902-NAB Doc. #: 1-1 Filed: 04/09/19 Page: 14 of 19 PageID #: 17
Electronically Filed - Jefferson - February 25, 2019 - 04:59 PM

JCCD that reasonable cause existed to suggest that Decedent might be subjected to abuse or neglect as a result of the reunification;

g.) Defendants failed to keep the Court reasonably informed as to the housing situation involving Decedent;

h.) Defendants intentionally and in bad faith made material misrepresentations to the Court concerning who was living with Decedent; and

i.) Defendants knowingly defied a controlling court order that they were under a ministerial duty to comply with, namely that the Decedent shall not be allowed to live with the mother and Harris shall not have any unsupervised contact with Decedent until Harris has a "clean drug screen" as requested by the family support team and is approved by the family support team. Thereafter, Defendants knowingly misled the Court, in bad faith, that these conditions to reunification had been met when they in fact had not, resulting in the Court ordering placement of Decedent with her mother and Darby.

52. Decedent's death was intentionally caused by the Defendants as described above.

53. As a direct and proximate cause of Defendants' intentional dereliction of their duties, Decedent was subjecting to a clear and present danger which resulted in her death, and as a result, Decedent, Plaintiff and the other Class 1 beneficiaries sustained loss because of Decedent's death in the nature of pecuniary losses as well as the loss of Decedent's companionship, comfort, counsel, support, guidance, instruction, and consortium.

54. That as a direct and proximate result of the Defendants' intent in causing the death of Decedent, Decedent suffered conscious severe pain, anxiety and mental distress, prior to her death.

Case: 4:19-cv-00902-NAB    Doc. #: 151-1   Filed: 11/30/21   Page: 16 of 20 PageID #: 4725
Case: 4:19-cv-00902   Doc. #: 1   Filed: 04/09/19   Page: 15 of 19 PageID #: 18
Electronically Filed - Jefferson - February 25, 2019 - 04:59 PM

55. As a direct and proximate cause of Defendants' intent in causing the death of Decedent, Plaintiff was required to incur expenses for the Decedent's funeral and burial.

56. Upon information and belief, Defendant Connelly claimed to be at the time of the allegations giving rise to this lawsuit responsible for 15-25 children varying in ages from 1 day old to 21 years old as their legal guardian, and was tasked with making legal and medical decisions regarding those children, including but not limited to authoring reports to the courts, testifying in court, working with law enforcement, was responsible for home investigations and insuring the children's safety under her care, was required to make critical decisions and remain calm in a high stress environment to ensure these Childrens' safety, all the while knowing these children were exposed to high risk and/or dangerous situations.

57. Upon information and belief, Defendant Connelly was overloaded with work as assigned to her by Great Circle, creating an untenable and unsustainable work load, which resulted in Connelly subverting the aforementioned rules and regulations, which were designed to ensure the safety of protected children, in an effort to bring child abuse cases to a premature final conclusion by deceiving the Courts of pertinent facts, which resulted in the artificial and premature disposition of cases on false pretenses, which had the desired effect of reducing Defendant Connelly's work load.

58. That at all times relevant herein, Great Circle knew Connelly and its case workers were overworked and could not adequately perform their required functions, which resulted in reckless indifference to the safety and wellbeing to the clients they represented, including Decedent, all of which justifies the award of punitive damages.

59. That Great Circle in the year 2016 had a total net worth of $92,796,742.

Case: 4:19-cv-00902-NAB Doc. #: 151-1 Filed: 11/30/21 Page: 17 of 20 PageID #: 4726
Case: 4:19-cv-00902 Doc. #: 1-1 Filed: 04/05/19 Page: 16 of 19 PageID #: 19
Electronically Filed - Jefferson - February 25, 2019 - 04:59 PM

**WHEREFORE**, Plaintiff demands trial by jury and Plaintiff prays for the Court to enter judgment for the Plaintiff and assess damages against Defendants in an amount excess of Twenty-Five Thousand Dollars ($25,000.00) and their costs herein incurred, for punitive damages and such any and such other or further relief as this Court deems just and proper.

### COUNT III- WRONGFUL DEATH PREMISED UPON A VIOLATION OF DECEDENT'S CIVIL RIGHTS SECURED BY 42 U.S.C. §§ 1983 and 1985 HARVEY v. GREAT CIRCLE AND CONNELLY

60. Plaintiff realleges paragraphs 1-59 above as if fully set forth herein by reference.

61. Defendant Great Circle and Kelly Connelly were respectively at all times herein a not-for-profit organization and an individual who provided foster care services on behalf of Great Circle, a private contractor for the State of Missouri.

62. At all times relevant herein, Defendants were performing services to and on behalf of Decedent under the color of Missouri law and such services and actions were made possible because Defendants were clothed with the authority of Missouri state law, and those services deprived Decedent of the rights and privileges secured by the United States Constitution, the Missouri Constitution, and laws of the State of Missouri as further set forth herein in violation of 42 U.S.C. §§ 1983 and 1985.

63. At all times herein, Decedent had a federal right to Due Process under the Fourteenth Amendment of the United States Constitution.

64. Defendants deprived Decedent of her constitutionally-protected rights secured by the Fourteenth Amendment of the United States Constitution, which entitled Decedent to substantive and procedural due process, health, welfare, proper housing, life and liberty, as well as her right to be free from unreasonable seizure, and her liberty interests in the companionship

16

with her father as well as her property rights by falsely representing to the Court exercising jurisdiction over Decedent that the pre-conditions to reunification, specifically, that Harris had a clean drug screen as requested by the family support team and that Darby was approved by the family support team were complied with and such representation was arbitrary and/or conscious shocking.

65. In the alternative to paragraph 64, Plaintiff alleges Defendants deprived Decedent of her constitutionally-protected rights secured by the Fourteenth Amendment of the United States Constitution, which entitled Decedent to substantive and procedural due process, health, welfare, proper housing, life and liberty, as well as her right to be free from unreasonable seizure, and her liberty interests in the companionship with her father as well as her property rights by knowingly failing to advise the Court exercising jurisdiction over Decedent that the pre-conditions to reunification, specifically, that Harris had a clean drug screen as requested by the family support team and that Darby was approved by the family support team were not complied with and such failure was arbitrary and/or conscious shocking.

66. Defendant Connelly created and maintained an abusive situation by recommending placement in a household where the suspected abuser, Harris, cohabitated with Decedent's mother and denied Decedent help from her father Plaintiff Kyle Harvey, and withheld material evidence from Decedent's Guardian Ad Litem and thereby deprived Decedent proper access to the Court system.

67. Upon information and belief, Defendant Connelly claimed to be at the time of the allegations giving rise to this lawsuit responsible for 15-25 children varying in ages from 1 day old to 21 years old as their legal guardian, and was tasked with making legal and medical decisions regarding those children, including but not limited to authoring reports to the courts,

17

testifying in court, working with law enforcement, was responsible for home investigations and insuring the children's safety under her care, was required to make critical decisions and remain calm in a high stress environment to ensure these childrens' safety, all the while knowing these children were exposed to high risk and/or dangerous situations.

68. Upon information and belief, Defendant Connelly was overloaded with work as assigned to her by Great Circle, creating an untenable and unsustainable work load, which resulted in Connelly subverting the aforementioned rules and regulations, which were designed to ensure the safety of protected children, in an effort to bring child abuse cases to a premature final conclusion by deceiving the Courts of pertinent facts, which resulted in the artificial and premature disposition of cases on false pretenses, which had the desired effect of reducing Defendant Connelly's work load.

69. That at all times relevant herein, Great Circle knew Connelly and its case workers were overworked and could not adequately perform their required functions, which resulted in reckless indifference to the safety and wellbeing to the clients they represented, including Decedent, all of which justifies the award of punitive damages.

70. That Great Circle in the year 2016 had a total net worth of $92,796,742.

**WHEREFORE**, Plaintiff demands trial by jury and Plaintiff prays for the Court to enter judgment for the Plaintiff and assess damages against Defendant in an amount excess of Twenty-Five Thousand Dollars ($25,000.00) and their costs herein incurred, for punitive damages and such any and such other or further relief as this Court deems just and proper.

Electronically Filed - Jefferson - February 25, 2019 - 04:59 PM

Case: 4:19-cv-00902-NAB   Doc. #: 151-1  Filed: 11/30/21   Page: 20 of 20 PageID #: 4729
Case: 4:19-cv-00902   Doc. #: 1-1  Filed: 04/09/19   Page: 19 of 19 PageID #: 22

Electronically Filed - Jefferson - February 25, 2019 - 04:59 PM

Respectfully submitted,



By: _____
**E. Ryan Bradley, #53777**
**Julia M. Kerr, #50350**
The Bradley Law Firm
1424 Washington Avenue, Ste. 300
St. Louis, MO 63103
(314) 721-9111 (phone)
(314) 255-2769 (fax)
Ryan@thebradleylawfirm.com
Julia@thebradleylawfirm.com

*Attorneys for Plaintiffs*

19